IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERICA HILL, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | NO. 19-4928 |
| GREATER PHILADELPHIA HEALTH : | |
| ACTION, INC., : | |
| : | |
| Defendant. : | |

MEMORANDUM

TUCKER, J.                                                                August 19, 2021

Before this Court are Defendant Greater Philadelphia Health Action's Motion for Summary Judgment (ECF 13), Plaintiff Erica Hill's Response in Opposition (ECF 15), and Defendant's Reply (ECF 17). As issues of material fact remain on whether Plaintiff was a qualified individual, summary judgment will be denied.

I.      FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiff Erica Hill was hired as a Dental Assistant by Defendant Greater Philadelphia Health Action (GPHA) on June 23, 2017. GPHA is a nonprofit operating a group of federally qualified health centers in Philadelphia which provide medical, dental, behavioral health, and child developmental services. GPHA's status as a federally supported health center means its staff are treated as employees of the federal government for the purposes of the Federal Tort Claims Act.

---

[1] This section primarily draws from Defendant's Statement of Undisputed Facts, Exhibit 1 of its Motion for Summary Judgment (ECF 13-1). Where there are disagreements, Plaintiff's Response to Defendant's Statement will be cited (ECF 15-3).

1

Plaintiff went to the Harris School of Business to become a dental assistant in 2013. Through the certificate program, she received eight months of classroom instruction and took part in a one-month externship at a dental office. On her resume for the GPHA position, she noted familiarity with tasks such as "assisting with extractions, impactions, fillings and implants", sterilizing instruments, and assisting with pediatric cleanings.

Plaintiff was hired and reported to GPHA for her first day of orientation on July 10, 2017. She had her first seizure on July 13, 2017, during training. In recounting the seizure, she testified that she felt an "aura", the words on the computer screen began to "run together", and she next remembered waking up in an ambulance. Following the seizure, she scheduled an appointment with her neurologist, Dr. Christopher Bradley. Dr. Bradley's July 14, 2017 report stated Plaintiff had not been taking her seizure medication for about eight months. While the report recommended Plaintiff refrain from "unsupervised risky activities" like swimming alone, working with heavy machinery, or driving, it also stated that with resumption of medication, "patient's risk of [a] repeat seizure is low." Pl.'s Resp. ¶ 36. Furthermore, Dr. Bradley concluded, "Fortunately patient's seizures involve absence type activity and patient should be allowed to resume work immediately." *Id.*

After the report was provided to GPHA, Defendant asked its Chief Medical Officer, Dr. Janet Young, to review it, provide her medical opinion, and make recommendations as to Plaintiff's continued employment as a dental assistant. Dr. Young in her report stated Plaintiff's seizure risk within the next six months was hard to predict, due to inadequate observation. The restrictions on risky activity mentioned in Dr. Bradley's report were said to "raise serious concerns about Ms. Hill's risk of injury to herself and others should a lapse of consciousness occur." The report recommended Plaintiff not be allowed to work as a dental assistant "due to

the risk of blood borne pathogen exposure and injury to herself and patients while handling instruments, particularly those categorized as 'sharps'". The report also expressed concern about safety if Plaintiff worked on steam sterilizations. The letter further stated, "Ms. Hill may be eligible for other employment at GPHA in positions that do not pose significant occupational exposure or injury risks." Pl.'s Resp. ¶ 41. GPHA terminated Plaintiff on July 27, 2017.

On January 29, 2018, Plaintiff filed a Charge of Discrimination with the EEOC, alleging termination on the basis of her disability in violation of the ADA. The agency closed the charge and issued a Right to Sue Letter on July 26, 2019. Plaintiff filed her complaint in this case on October 22, 2019, alleging GPHA violated the ADA by failing to engage in the interactive process of determining a reasonable accommodation, and terminating employment because of her disability.

GPHA filed its Motion for Summary Judgment on September 24, 2020. Plaintiff filed her Response in Opposition on October 15, 2020.

**II.      LEGAL STANDARD**

Summary judgment can only be awarded when "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Liberty Mut. Ins. Co. v. Sweeney*, 689 F.3d 288, 292 (3d Cir. 2012). To defeat a motion for summary judgment, there must be a factual dispute that is both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, (1986); *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008). A material fact is one that "might affect the outcome of the suit under the governing law[.]" *Anderson*, 477 U.S. at 248. A dispute over a material fact is "genuine" if, based on the evidence, "a reasonable jury could return a verdict for the nonmoving party." *Id.*

The movant bears the initial burden of demonstrating the absence of a genuine dispute of a material fact. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). When the movant is the defendant, they have the burden of demonstrating the plaintiff "has failed to establish one or more essential elements of her case." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013). If the movant sustains their initial burden, "the burden shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

At the summary judgment stage, the court's role is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249; *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 253 (3d Cir. 2007). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. *See Horsehead Indus., Inc. v. Paramount Commc'ns, Inc.*, 258 F.3d 132, 140 (3d Cir. 2001). Nonetheless, the court must be mindful that "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

III.    **DISCUSSION**

Plaintiff has presented multiple jury issues precluding summary judgment. This opinion will first discuss the evidence of Plaintiff's qualifications, followed by GPHA's failure to conclusively demonstrate Plaintiff presented a "direct threat" to her colleagues due to her disability. The Court will then address her claims regarding the interactive process.

### A. Jury Issues Remain as to Plaintiff's Status as a "Qualified Individual"

Plaintiff has presented enough evidence to raise a jury question on her status as a "qualified individual" for the purposes of an ADA discrimination claim. To make a *prima facie* case of disability discrimination under the ADA, a plaintiff must establish that they (1) have a disability, (2) are a 'qualified individual', and (3) suffered an adverse employment action because of that disability. *Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 611 (3d Cir. 2006). The burden to establish this *prima facie* case is "not onerous". *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Once a plaintiff demonstrates a *prima facie* case, a jury could find that a defendant violated their rights under the "pretext" framework in *McDonnell Douglas Corp. v. Green*; after a plaintiff first meets the burden of demonstrating the elements above, a defendant has the burden of providing a non-discriminatory reason for their actions, after which the plaintiff again has the burden of demonstrating the given reason "was in fact pretext". *Xu Feng v. Univ. of Delaware*, 785 F. App'x 53, 56 (3d Cir. 2019) (quoting M*cDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804 (1973)).

Defendant implicitly concedes elements (1) and (3) of the *prima facie* case and therefore hangs its hat on challenging (2); whether Plaintiff was actually a "qualified" employee for the dental assistant role. This Court rules that a jury could find her qualified for the position.

GPHA in its argument for summary judgment emphasizes parts of Plaintiff's job that are comparatively infrequent in the actual, day-to-day performance of the dental assistant role. An employee making a discrimination claim has the burden of showing they are an "otherwise qualified" individual. *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). A "qualified" individual is someone who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position" and can perform the "essential

functions" of the position, with or without accommodation. 29 C.F.R. § 1630.2(m). Whether an individual with a disability is qualified for the role is determined at the time of the employment decision. *Gaul*, 134 F.3d at 580.

The "essential functions" of a job consist of the "fundamental job duties of the employment position" and does not include its "marginal functions". 29 C.F.R. § 1630.2(n)(1). Evidence as to whether a particular function is essential includes (1) the employer's judgment, (2) written job descriptions prepared before advertising or interviewing applicants, (3) the amount of time spent on the job performing the function, and (4) the work experience of past individuals who have done the job, or (5) the experience of other individuals currently working in similar jobs, among others. 29 C.F.R. § 1630.2(n)(3).

The contours of Plaintiff's role are laid out in the five-page description of the GPHA "Dental Assistant I" position, which contains about fifty-six bulleted items. GPHA Dental Asst. I Job Description, Def.'s Ex. 9 (ECF 13-1). Some of the items on this exhaustive list include: cleaning and disinfecting operation areas for patient care, taking x-rays and documenting them, preparing patients for dental procedures, and various receptionist roles during short staffed periods, among other tasks. *Id.* at Ex. 9 p. 2. Others seem to bear little relevance to the day-to-day role; one bullet point states that a "Dental Assistant I" should be prepared to "provide services, as directed, at facilities other than a GPHA location in the event that an incident that compromises the safety, security, or integrity of the United States of America should occur." *Id.* at Ex. 9 p. 3.

Defendant emphasizes in its summary judgment motion the duties of "responding to possible emergency situations", "watching patients during surgical procedures and alerting dentists of changes in condition", and "managing medical emergencies". Def.'s Mot. Summ. J.

2-3. Plaintiff counters that the eight items detailed in Defendant's Motion were cherrypicked, and two of them are "repetitive generalizations about 'emergencies' not found in the job description itself." Pl.'s Resp. 7.

Defendant acknowledges Plaintiff had been performing key duties of the job, including assisting the doctor, taking X-rays of patients, assisting in tooth extractions, and responding to at least one medical emergency. Def.'s Statement ¶¶ 17-20. Plaintiff was assigned to duties substantially similar to those in the GPHA job description in other dental offices. *Id.* at ¶ 25. Plaintiff also had the requisite educational requirements for the job. *Id.* at ¶¶ 6-7. Defendant's arguments regarding Plaintiff's unsuitability for the role rely on lurid characterizations of the danger she could pose to colleagues while in the throes of an actual seizure.[2] This is an argument that, taken to its logical conclusion, would render the changes to the ADA in the ADA Amendments Act of 2008 a dead letter, as the law was designed to encompass conditions—such as epilepsy—that received insufficient protection under the original Act. *Koller v. Riley Riper Hollin & Colagreco*, 850 F. Supp. 2d 502, 513 (E.D. Pa. 2012) (citing 154 Cong. Rec. H8286-03 (2008), H8289 (statement of Rep. George Miller)). For these reasons, Plaintiff has presented enough facts to create a jury issue on her status as a "qualified individual" under the Act.

## B. Defendant has not Demonstrated Plaintiff was a "Direct Threat"

Plaintiff has presented enough for a jury to potentially find she did not pose a "direct threat" to the GPHA workplace. Defendant argues Plaintiff's risk of seizures, and her inability to perform her job duties during one, make her not a "qualified individual" because her condition

---

[2] *See, e.g.*, Def.'s Mot. Summ. J. 12 ("Significantly, Plaintiff has not (because she cannot) present any facts to demonstrate that she could perform the clinical duties of a dental assistant position when 'she was experiencing an uncontrolled and unpredictable seizure'—let alone that she could do so in a safe manner.").

7

constitutes a "direct threat" to the employer and others.[3] A claim that an employee is not qualified because they "pose a direct threat" to others in the workplace is an affirmative defense available to an employer. *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 78 (2002) (citing 42 U.S.C. § 12113(b)). The existence of such a threat is "to be proved by the employer." *Engle v. Physician Landing Zone*, No. CV 14-1192, 2017 WL 1013095, at *8 (W.D. Pa. Mar. 14, 2017).

Defendant's burden is to demonstrate Plaintiff presents "a significant risk of substantial harm to the health or safety of the individual or others that cannot be eliminated or reduced by reasonable accommodation," based on "an individualized assessment of the individual's present ability to safely perform the essential functions of the job." 29 C.F.R. § 1630.2(r). In making this evaluation, factors include (1) the duration of the risk, (2) the nature and severity of potential harm, (3) the likelihood that harm will occur, and (4) the imminence of potential harm. *Id.* Analyzing these factors requires gathering "substantial information" about the employee's work history and medical status, but an employer is "disallow[ed] [from] reliance on subjective evaluations". *Nunes v. Wal-Mart Stores, Inc.*, 164 F.3d 1243, 1248 (9th Cir. 1999). A nonzero risk based on a disability is not enough. An employer can only deny employment to an individual "when it poses a significant risk, i.e. high probability, of substantial harm; a speculative or remote risk is insufficient." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 220 (2d Cir. 2001).

The evidence at hand in this case presents close to the platonic ideal of a "genuine dispute of material fact". Defendant leans on the report of its Chief Medical Officer, Dr. Janet Young in

---

[3] Plaintiff argues this "direct threat" argument was waived because it was not specifically enumerated as an affirmative defense in Defendant's Answer. However, "a defendant does not waive an affirmative defense if he raised the issue at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Woodson v. Scott Paper Co.*, 109 F.3d 913, 924 n.9 (3d Cir. 1997) (quoting *Charpentier v. Godsil,* 937 F.2d 859, 864 (3d Cir. 1991). Defendant in its answer and interrogatory responses stated it terminated Plaintiff because of "substantial risk of harm to herself and Defendant's patients" *See, e.g.*, Def.'s Answer ¶¶ 24-25. This is enough notice to avoid prejudice to Plaintiff.

arguing Plaintiff posed a direct threat to the employer. However, Dr. Young's report sits beside the evaluation of an equally qualified doctor who actually interacted directly with Plaintiff: Dr. Bradley's. Dr. Young viewed Dr. Bradley's instruction that Plaintiff not engage in certain unsupervised risky activities as dispositive of Hill's unfitness for employment. In her report, she wrote "[t]hese restrictions raise serious concerns about Ms. Hill's risk of injury to herself and others should a lapse of consciousness occur." Def's Mot. Summ. J. 15 (citing Def.'s Ex. 14). By contrast, Dr. Bradley's preceding sentence stated "[Plaintiff] should be allowed to resume work immediately", and the risk of repeat seizures was low "with appropriate initiation of medication" and regular use. Def.'s Ex. 12.

      Other courts have reversed and denied grants of summary judgment where conflicting medical opinions as to the plaintiff's fitness for employment are proffered. *See, e.g.*, *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 220–21 (2d Cir. 2001) (reversing summary judgment for defendant where "The physician [defendant] asked to review the plaintiff's condition . . . . said nothing to indicate that she posed a significant risk of harm to herself or others in performing her duties."); *Pesce v. New York City Police Dep't*, 159 F. Supp. 3d 448, 457 (S.D.N.Y. 2016) (declining to grant summary judgment as both defendant and plaintiff had multiple medical professionals presenting conflicting evidence as to plaintiff's fitness for work). At the summary judgment stage, "it is not the court's role to weigh the disputed evidence and decide which is more probative." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 331 (3d Cir. 1995).

      Additionally, the cases Defendant cites in support of granting summary judgment are distinguishable. In *Olsen v. Capital Region Medical Center*—a case Defendant leans heavily on—the plaintiff, tasked with operating radiology equipment for mammograms, was deemed to

pose a direct threat to the employer due to her seizures. No. 10-4221-CV-C-FJG, 2012 WL 1232271, at *6 (W.D. Mo. Apr. 12, 2012), *aff'd,* 713 F.3d 1149 (8th Cir. 2013). However, Olsen had fifteen seizures over three years, causing numerous "cuts and abrasions, [and] bites to her tongue and cheek". *Id.* at *7. On two occasions, plaintiff had seizures while conducting mammograms on patients. *Id.* This is in contrast to Hill's single seizure, far away from a patient.

In *McFarland-Peebles v. Virginia Dept. of Motor Vehicles*, a plaintiff deemed a non-qualified individual had a dozen seizures in four years, in spite of decreasingly effective medical treatments. 352 F. App'x 848, 849 (4th Cir. 2009). Meanwhile, in *Knuppel v. Texas Health and Human Services*, the plaintiff had multiple seizures before the end of her probationary period, despite attempts to provide reasonable accommodations and implement a medical plan. No. 6:18-CV-00048-ADA, 2019 WL 5595239, at *1 (W.D. Tex. Oct. 30, 2019). The court there granted the defendant summary judgment, noting the employer had engaged in an individualized assessment and even allowed the plaintiff to return to work after the first seizure, not taking action to terminate until the third seizure. *Id.* at *6. In each of these cases where summary judgment was granted towards defendants on the direct threat issue, the seizures were more severe than in Plaintiff's situation, and remedies had been attempted—and failed.

For these reasons, issues of material fact remain on the "direct threat" defense.[4]

### C. Jury Issues Remain as to Plaintiff's Accommodation and Interactive Process Claims

Plaintiff has presented issues of material fact relating to her claims alleging a failure to accommodate and engage in the interactive process. Defendant contends this claim should be

---

[4] As Plaintiff has presented issues of material fact for both her status as a "qualified individual" and not being a "direct threat" to Defendant's workplace, Plaintiff has also presented sufficient facts to retain her claims based on pretext under the *McDonnell Douglas* framework, as well as a claim she was "regarded as" disabled under the ADA by GPHA.

dismissed because it was not administratively exhausted, but this view is incorrect.[5] Alternatively, Defendant argues facts were not presented demonstrating an attempt by Hill to seek accommodation from GPHA as to her disability. However, requests for disability accommodation do "not have to be in writing, be made by the employee, or formally invoke the magic words 'reasonable accommodation' . . . . [rather] the employer must know of both the disability and the employee's desire for accommodations." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999).

A request for reasonable accommodation can be as simple as an employee's spouse calling the employer to tell it the plaintiff—eventually fired for alcoholism—had entered an alcohol treatment program. *Corbett v. Nat'l Prod. Co.*, No. CIV. A. 94-2652, 1995 WL 133614, at *4 (E.D. Pa. Mar. 27, 1995). In this case, Plaintiff going for an evaluation from her doctor and the doctor's subsequent statement that Plaintiff could return to work and engage in the full range of her duties with appropriate medical treatment constitutes a request for accommodation. Given a valid request for accommodation, an employer is not required to accept any particular concession in the interactive process, but rather "make a good faith effort to seek accommodations." *Taylor*, 184 F.3d at 317. Defendant's response to this document was to have a staffer write an evaluation that could be seen as an attempt to justify a decision already made to fire Plaintiff. This set of facts constitutes a proper claim for failure to engage in the interactive

---

[5] Plaintiff has administratively exhausted her claims relating to ADA retaliation and failure to engage in the interactive process. Whether a claim has been administratively exhausted turns on if the allegations "are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996). A claim does not need to be stated literally word-for-word in the EEOC charge to be "within the scope" of the complaint or investigation; it just needs to be "reasonably related to [allegations] in the administrative charge." *Kopko v. Lehigh Valley Health Network*, 776 F. App'x 768, 773 (3d Cir. 2019). In this case, the claims are "reasonably related" to those in the EEOC charge, which alleges termination on the basis of epilepsy. Def.'s Ex. 18. These counts are based on the same set of facts as in the charge, and the request for accommodation is implied by mention in the charge of her thwarted desire to return to work and communications with her doctor. A claim for retaliation logically follows from these facts alleged. *See infra* n.6.

process. Because an attempt to seek an accommodation was made, the retaliation claim was also properly pled.[6] The claims remain.

## IV.   CONCLUSION

For the foregoing reasons, summary judgment for Defendant is denied on all counts. An appropriate order follows.

---

[6] A *prima facie* case for ADA retaliation requires demonstrating (1) a plaintiff engaged in protected activity, (2) the employer took an adverse action against the employee, and (3) there was a causal connection between the protected activity and adverse action. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). Making a request for an accommodation is protected activity under the ADA. *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 191 (3d Cir. 2003). Therefore, the progression of events alleged—that Plaintiff was terminated after submitting a medical evaluation to the employer which proposed steps for a return to work given her disability—presents a valid claim for retaliation under the ADA.